# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Kalilah Diane Brantley,

      Plaintiff

v.

American Airlines, Inc.,

      Defendant

Case No.: 2:24-cv-02246-JAD-NJK

**Order Granting Motion for Summary Judgment and Closing Case**

[ECF No. 24]

Kalilah Diane Brantley was terminated from her job at American Airlines just months after she returned from a voluntary leave.  Although she filed this lawsuit on numerous employment-discrimination theories, all that remains after a motion to dismiss is a single claim that American fired her in retaliation for requesting a medical-disability accommodation under the Americans with Disabilities Act (ADA).[1]  The airline now moves for summary judgment, arguing that Brantley can't make out a prima facie case of ADA retaliation, the individuals who made the decision to fire Brantley didn't even know about her accommodation request, and regardless, the company had a non-retaliatory reason to terminate her employment.[2]  Although the record may support a prima facie case of retaliation, it also overwhelmingly shows that American had a legitimate, non-retaliatory reason for Brantley's termination, which she has failed to refute with evidence.  So I grant American Airlines' motion for summary judgment and close this case.

---

[1] ECF No. 21 (order granting in part motion to dismiss).

[2] ECF No. 24 (motion for summary judgment).

**Background**

The pandemic was not easy on the airline industry and its people.  Brantley had been working for the airlines since 2006 and was a customer service coordinator for American Airlines at the Harry Reid International Airport in Las Vegas, Nevada, when it hit.[3]  She took a two-year voluntary leave of absence starting in April 2020.[4]  She returned to her job on July 25, 2022.[5]

While on leave, Brantley was diagnosed with multiple sclerosis.[6]  So when preparing to return to work, she submitted a request for an accommodation under the ADA.[7]  She withdrew that request on August 7, 2022, writing in an email, "My physician will be resubmitting ADA paperwork that has more clarity.  At this time, I am withdrawing my accommodation."[8]  She did not submit a new accommodation request,[9] and she was fired on September 29, 2022.[10]

Brantley claims that she was terminated "in retaliation for having engaged in protected activity under" the ADA.[11]  She pled numerous theories in her unverified complaint,[12] but only the ADA retaliation claim survived dismissal.  She was granted leave to amend her dismissed

---

[3] ECF No. 27-1 at 3 (Brantley depo.).

[4] *Id.* at 3–4.

[5] *Id.* at 4.

[6] *Id.* at 10.

[7] *Id.* at 74 (AA00245).

[8] *Id.* at 79 (AA0250).

[9] *Id.* at 25.

[10] *Id.* at 3.

[11] ECF No. 12 at 6.

[12] ECF No. 3 (complaint).

claims for disability, race, color, and gender discrimination and Title VII retaliation, but she did not file an amended complaint, and the deadline to do so has long-since passed.[13]

Discovery has closed and American Airlines moves for summary judgment on Brantley's lone claim.[14]  It argues that Brantley cannot establish a prima facie case of ADA retaliation because she can't prove causation for two reasons: (1) the management team that made the decision to fire her didn't know about her withdrawn accommodation request, and (2) Brantley can't show that her accommodation request was a but-for cause of her termination.  Even if Brantley could make out a case of retaliation, the airline contends, it had a legitimate, nonretaliatory reason to terminate: Brantley's heavily documented insubordination and unprofessionalism.  American Airlines relies on Brantley's deposition testimony, affidavits from two corporate witnesses, and scores of pages of Brantley's text messages to demonstrate its entitlement to summary judgment.[15]

Brantley filed an opposition to the motion for summary judgment in which she offers her own "truth" of the history of her employment at American Airlines.[16]  She characterizes the motion as plagued with "repeated misrepresentations, omissions of fact particularly in reference to time of occurrence, all submitted to besmirch [her] character" and "have the court believe that [she] behaved as a crazed banshee who thrived from chaos and sought to raise havoc at any opportunity," when really "if any campaign was launched, it was towards [her], and not the other way around."[17]  She attaches no documents to her response and does not cite to any page of the

---

[13] *See* ECF No. 21 at 11.

[14] ECF No. 24.

[15] ECF No. 27.

[16] ECF No. 30.

[17] *Id*. at 3.

record to support her take. "These events are well documented and can be located in the 500+ pages of the EEOC charging file," she says.[18] And she contends without specific example that "[o]pposing counsel cherry picked parts of [her deposition] transcript that were favorable to the Defendant."[19] She sums up the entire motion as "deliberate attempts to dilute the truth in a hodgepodge of misrepresentation."[20]

**Analysis**

To establish a prima facie case of retaliation under the ADA, a plaintiff must show that (1) she engaged in activity protected by the ADA, (2) the employer subjected her to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action.[21] Making a request for a disability accommodation is a protected activity,[22] and termination is the ultimate adverse employment decision.[23] The causal-link element requires the plaintiff to show that the termination would not have occurred but for the protected activity.[24] "If the employee establishes a prima facie case, the employee will avoid summary judgment unless the employer offers legitimate reasons for the adverse employment action," at which point

---

[18] *Id.* The EEOC file is not part of this court's record.

[19] *Id.* at 5.

[20] *Id.*

[21] *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004).

[22] *Pardi*, 389 F. 3d at 850.

[23] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).

[24] *Murray v. Mayo Clinic*, 934 F.3d 1101, 1104–07 (9th Cir. 2019); *see also Meyer v. DeJoy*, 2022 WL 3334981 at *2 (9th Cir. Aug. 12, 2022) (unreported) (upholding grant of summary judgment on ADA retaliation claim because plaintiff "failed to show that she participated in protected activity that was the but-for cause of any action taken by the Postal Service").

"the burden shifts back to the employee to demonstrate a triable issue of fact as to whether such reasons are pretextual."[25]

**A.     The record thinly supports a prima facie case of retaliation.**

The record shows, and American Airlines does not dispute, that Brantley can establish the first two elements for a prima facie ADA retaliation claim.  On July 20, 2022, she made a formal request for accommodations needed when her multiple sclerosis would flare up, and she engaged in communications with the airline's ADA team in Dallas that handles such requests.[26] So there is no dispute that she engaged in activity protected by the ADA.  And her termination was plainly an adverse employment action.

Whether Brantley can show that her accommodation request was the but-for cause of her termination is less plain.  The airline contends that the people who made the firing decision were separate and apart from those involved in the accommodation discussions.  Brantley argues that "[t]he individuals who terminated the Plaintiff are the exact same individuals" involved in that process.[27]  American Airlines Regional Managing Director John Kashchy, who made the termination decision, declares that at the time the termination decision was made, he "did not know that Ms. Brantley had submitted an accommodation request" and that request "played no role in the termination decision,"[28]  But Brantley raised her accommodation need in her communications with Kashchy, as he acknowledged in a July 3, 2022, email:

---

[25] *Pardi*, 389 F. 3d at 849.

[26] *See* ECF No. 27-1 at 14–27 (Brantley depo.), 74 (accommodation request), 79 (email exchanges).

[27] ECF No. 30 at 4.

[28] ECF No. 27-2 at ¶¶ 22–23 (Kashchy decl.).

> Also, **you mention needing an ADA accommodation.** Please go to Jetnet and fill out the ADA request for accommodation paperwork. You can do that now in advance of your return. While I do not know your particular situation, keep in mind that paperwork from a healthcare provider is necessary so download that form as well. Also to note, accommodations are reviewed individually and are based on the needs of the operation and utilization of staff in a particular station (regardless of staffing levels in that station).[29]

This record thus contains a genuine evidentiary dispute over whether the termination team was aware of Brantley's ADA accommodation request when she was fired two months later.

The Ninth Circuit has recognized that "close timing" between the protected activity and the adverse employment action "provides circumstantial evidence of retaliation that is sufficient to create a prima facie case of retaliation,"[30] and panels have found causation established by gaps of several weeks or a couple of months.[31] Here, Brantley submitted the form for an ADA accommodation on July 20th and withdrew it on August 7th,[32] but discussions with the ADA accommodation team about that claim persisted until August 20th,[33] which was slightly less than six weeks before Brantley's termination. Under Ninth Circuit authority, this timing is some circumstantial evidence of retaliatory motive, and it weakly pushes her retaliation claim over the

---

[29] ECF No. 27-1 at 84 (AA0188) (emphasis added).

[30] *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002).

[31] *See, e.g., Miller v. Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir. 1989) (finding a prima facie case of causation established when discharges occurred 42 and 59 days after EEOC hearings); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (finding sufficient evidence in case in which adverse actions occurred less than three months after complaint filed, two weeks after charge first investigated, and less than two months after investigation ended).

[32] *See* ECF No. 27-1 at 74, 79. In her opposition to the motion for summary judgment, Brantley offers the unsworn statement that "I did not withdraw the request for accommodation." ECF No. 30 at 4. Unsworn statements like this carry no weight on summary judgment, and this one is also belied by Brantley's email

[33] *See* ECF No. 27-1 at 25.

6

line into a prima facie case.  Because the record establishes a prima facie case of ADA retaliation, "the burden of production—but not persuasion—then shifts to" American Airlines "to articulate some legitimate, nondiscriminatory reason for" Brantley's termination.[34]

**B.      American Airlines has articulated a legitimate, non-retaliatory reason for Brantley's termination.**

The airline has made a robust showing that Brantley was fired for a pattern of unprofessionalism and insubordination, and for soliciting another employee to make a false claim against her direct supervisor, Manager on Duty Lynette Palepoi.  In a declaration in support of this motion, Kashchy swears under oath that the decision to fire Brantley was made because he had "concluded that since she returned from" her voluntary leave period she "had repeatedly sent combative and insulting communications to senior leaders" and that neither his nor Station Director Lewis Townes's "warnings had curbed her behavior."[35]  The record strongly supports this characterization:

- On June 27, 2022, Brantley emailed Kashchy (a supervisor four levels up and whom she'd never met[36]), "Hello, Kashchy," and complained about her treatment by Palepoi in the few months before her leave began back in 2020, along with administrative errors that happened during her leave.[37]

---

[34] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002); *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 472–73 (9th Cir. 2015) ("We apply the Title VII burden-shifting framework, as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to retaliation claims under the ADA.").

[35] ECF No. 27-2 at ¶ 17.

[36] ECF No. 27-1 at 180–181 (AA0174) (wherein Kashchy wrote to Brantley "You have never met me."); ECF No. 27-2 at ¶ 13.

[37] ECF No. 27-1 at 89 (AA0193).

- Kashchy responded with a professional email the following day and promised to look into her allegations of a "backlash of conflict"[38] or forward her concerns to the appropriate person.[39] Brantley responded on June 29, 2022, with a lengthy email criticizing Kashchy's response and beginning, "anymore syrupy, unrealistic, philosophical emails is sure to bring on a case of diabetes. Pun intended."[40] While Brantley characterized her tone as "joking" or "light hearted," in her deposition she acknowledged that Kashchy perceived it to be unprofessional.[41]

- Palepoi emailed Brantley on the Friday before she returned to work, scheduling a start time for Brantley of 8 a.m.[42] Brantley responded that same day by asking if she could report instead at 10 a.m. and indicated that she was "waiting on the approval of an ADA accommodation."[43] Palepoi responded that Brantley was "welcome to come in" at 10 a.m.[44]

- Brantley volleyed back with a lengthy email message sent at 2 a.m. on the morning of her July 25, 2022, return date.[45] She wrote, "You are devoid of any conscience relating to personal discomfort, causing personal injury or worse to certain team members to whom you have a personal disdain for. That includes any individual who refuses to ask, 'How

---

[38] *Id*. at 90.

[39] *Id*. at 88 (AA0192).

[40] *Id* at 85 (AA0189).

[41] *Id*. at 27–28.

[42] *Id*. at 177 (AA0212).

[43] *Id*.

[44] *Id*. at 176 (AA0211).

[45] *Id*. at 174 (AA0209).

high, Lynnette?'"[46]  She went on to explain in detail why and how Palepoi's prior communications had wronged Brantley and should instead have been handled.[47] Brantley then said that she had unilaterally "determined it was in" her "best interest" to complete some of the company's on-line courses from home before her start date, and she took the position that this "obviate[d her] from" reporting for the first week of work.[48]

- Brantley copied these and several other derogatory emails on Palepoi's subordinates, a move that Kashchy perceived as "insubordinate, disrespectful, and an attempt to undermine Ms. Palepoi's authority."[49]

- Kashchy emailed Brantley on July 26, 2022, "[w]hile you did complete these lessons at home it is not appropriate for you to advise you won't report to work once the schedule has been established for you."[50]

- Brantley responded, "The appropriateness of the matter at hand is addressing the 82 pages of text messages that arrived in your office on 7/1, not my perceived insubordination," and she criticized his team's handling of her situation.[51]

- Brantley believed that this text-message dump of hundreds of text messages between herself and a former American Airlines employee, Karma Goodwin, showed Palepoi's hostility toward Brantley; what they actually show is Brantley's hostility toward

---

[46] *Id*. at 174–75.

[47] *Id*. at 175 (AA0210).

[48] *Id*. at 176 (AA0211).

[49] ECF No. 27-2 at ¶ 8; *see also* ¶ 14.

[50] ECF No. 27-1 at 174 (AA0209).

[51] *Id*. at 173 (AA0208).

Palepoi.[52]  Kashchy will testify that those text messages "confirmed to [him] that Ms. Brantley was pursuing a vendetta against Ms. Palepoi that originated years earlier," and he found "Brantley's disparagement of Ms. Palepoi's religion in the text message exchanges to violate" the airline's "expectations that employees do not engage in discrimination."[53]

- Kashchy emailed Brantley on July 30, 2022, warning that her communications were unacceptable:

> We have worked hard to try and make your transition back to work as smooth as possible.  We have consistently been met with disrespectful and inappropriate emails from you.  I cannot allow you to continue to treat the team in this disrespectful and unprofessional manner. . . .
>
> The tone of your recent e-mail, particularly given you copied many of Lynette's subordinates, is a show of insubordination.
>
> You have never met me.  I did not respond when you accused me of being "syrupy, unrealistic, philosophical" so much as to make you sick with "diabetes."  Again, you must immediately cease the unprofessional tone and content of your e-mails.  Any more such emails calling names and insulting team members will not be tolerated.  Understand that we want to hear any concerns you may have as long as they are made professionally and based on factual evidence.
> . . .
> Finally, it is my expectation that any operational concerns you may have be first addressed to your Station Director, Lewis Townes. He will address your concerns and ensure there is appropriate resolution.[54]

---

[52] *Id*. at 91–172 and ECF No. 27-3 (text messages that, among other things, refer to Palepoi's family as "racist Mormons").

[53] ECF No. 27-2 at ¶¶ 11–12.

[54] ECF No. 27-1 at 180–181 (AA0174); ECF No. 27-2 at ¶ 13.

- When Brantley continued to send critical emails to Palepoi and copy her subordinates,[55] Townes emailed Brantley on September 13, 2022, saying "[t]his is unacceptable and must stop. Lynette is a leader at this station and undermining her role as a leader is insubordinate. This is your last warning. Any further such conduct will lead to disciplinary action."[56]

- On September 6, 2022, Customer Service Manager Jacquilla Marzette advised the airline that Brantley had "asked her to file a false report targeting" Palepoi.[57]

- During the company's further investigation into that report on September 15, 2022, Marzette recounted that Brantley mentioned Palepoi's religion and accused her of "not liking black people and hating gays," and that Brantley "said she intended to take Ms. Palepoi down."[58] Marzette described Brantley as having a "vendetta" against Palepoi "and trying to dehumanize and humiliate her in front of her team."[59]

Solicitation of the false report was the final straw. The company's "Rules of Conduct" for employees state that "[m]isrepresentation of facts or falsification of records is prohibited" and that "[d]ishonesty of any kind in relation with the Company . . . will be grounds for dismissal . . . ."[60] Kashchy's sworn declaration states that, together, he and Townes "concluded that [they] had given Ms. Brantley every opportunity to comport her behavior to American Airlines'

---

[55] *See, e.g.*, ECF No. 27-1 at 188–89 (EEOC 0447).

[56] ECF No. 27-2 at ¶ 14.

[57] ECF No. 27-4 at ¶ 3 (decl. of Amanda Beamon).

[58] *Id*. at ¶ 7.

[59] *Id*. at ¶ 8.

[60] ECF No. 27-1 at 71, 72.

11

standards and she had demonstrated she was not willing to do so. Accordingly, termination was appropriate under the circumstances."[61] That conclusion, and the airline's burden to articulate a legitimate, non-retaliatory reason for Brantley's termination, are more than satisfied by this full-bodied evidentiary showing.

### C.   Brantley has not satisfied her burden to show that her employer's justification for termination is pretextual.

Because American has met its burden to produce evidence that its termination decision was based on a legitimate, non-retaliatory reason, the burden shifts back to Brantley to "show that the articulated reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."[62] The quantity of proof needed at this stage is different from the prima facie case stage. Although a plaintiff may rely on circumstantial evidence of timing to show retaliatory motive, "[t]o show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives."[63] So a plaintiff "may not defeat a defendant's motion for summary judgment merely by denying the credibility of [its] proffered reason for the challenged employment action," nor can she establish a genuine issue of material

---

[61] ECF No. 27-2 at ¶ 18; *see also* ECF No. 27-1 at 190 (employment-termination letter).

[62] *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

[63] *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), as amended (Jan. 2, 2004).

fact exists "by relying solely on [her] subjective belief that the challenged employment action was unnecessary or unwarranted."[64]

Brantley has not provided specific and substantial evidence challenging the credibility of American Airlines' motives in this firing decision. She suggests that there is "a complete lack of clarity as well as transparency on the part of the Defendant."[65] But she does not deny the authenticity of the emails and text messages attached to the motion for summary judgment, which support the employer's narrative that Brantley was a difficult and mutinous employee whose insubordination was uncurbed by any of the approaches that management tried. Her own text messages that she shared with management evinced a deep hatred and lack of respect for her supervisor Palepoi that went back years. The company learned on September 6, 2022, that Brantley's bad attitude had devolved into even worse conduct when another employee reported that Brantley had asked her to falsify a complaint against management, which Brantley offered to pen. That reporting employee described Brantley on September 15, 2022, "as having a 'vendetta' against Ms. Palepoi and trying to dehumanize and humiliate her in front of her team," which Brantley had been expressly warned against, so the company made the decision to fire her.[66] It did so on September 29, 2022.[67]

This specific and substantial evidence in the record as to timing overwhelmingly disproves any pretext. Brantley has provided no evidence with her opposition whatsoever, nor pointed to any evidence in the record on which this court can conclude otherwise. So I find that

---

[64] *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n.6 (9th Cir. 2006) (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994), as amended on denial of reh'g (July 14, 1994), and *Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986)).

[65] ECF No. 30 at 4.

[66] ECF No. 27-1 at 71, 72.

[67] *Id*. at 190.

Brantley has not met her shifted burden to show that the employer's articulated reason for firing her was pretext for ADA retaliation.  American Airlines is therefore entitled to summary judgment on this lone claim, ending this case.

## Conclusion

IT IS THEREFORE ORDERED that defendant American Airlines, Inc.'s motion for summary judgment **[ECF No. 24] is GRANTED.**  The Clerk of Court is directed to enter Final Judgment in favor of Defendant American Airlines, Inc., and against Plaintiff Kalilah Diane Brantley, and close this case.

_____
U.S. District Judge Jennifer A. Dorsey
April 15, 2026

14